NOT FOR PUBLICATION

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

| | |
|---|---|
| JOSEPH PETRUSKA, | Civil Action No.: 14-03663(CCC) |
| Plaintiff, | |
| v. | **OPINION** |
| RECKITT BENCKISER, LLC, | |
| Defendant. | |

**CECCHI**, District Judge.

**I.     INTRODUCTION**

This matter comes before the Court on the motion of Reckitt Benckiser, LLC, ("RB" or "Defendant") to dismiss the First Amended Complaint of Joseph Petruska ("Plaintiff") pursuant to Federal Rule of Civil Procedure 12(b)(6). The Court has considered the submissions made in support and in opposition to the instant motion.[1] The Court decides this matter without oral argument pursuant to Rule 78 of the Federal Rules of Civil Procedure. Based on the reasons that follow, Defendant's motion to dismiss is denied as to Counts III and IV of the Amended Complaint and granted without prejudice as to the remaining counts. Plaintiff is granted thirty (30) days in which to file an Amended Complaint that cures the pleading deficiencies discussed below.

**II.    BACKGROUND**

---

[1] The Court considers any arguments not presented by the parties to be waived. See Brenner v. Local 514, United Bhd. of Carpenters & Joiners, 927 F.2d 1283, 1298 (3d Cir. 1991) ("It is well established that failure to raise an issue in the district court constitutes a waiver of the argument.").

1

This dispute arises out of Defendant RB's alleged violations of the Age Discrimination in Employment Act, 29 U.S.C. § 621 et. seq. ("ADEA") and the New Jersey Law Against Discrimination, N.J.S.A 10:5-1 et seq. ("NJLAD"). (Am. Compl., ¶ 1.) Plaintiff was employed by RB from September 1, 1994 through January 31, 2013. (Id. ¶¶ 28-29.) His position as Senior Project Engineer was part of RB's Packaging Development, Engineering and HSE Department, managed by Sreenivas Rao since September 2012. (Id. ¶¶ 17-18, 25.) Plaintiff alleges that he received strong ratings in his 2008, 2009, 2010 and 2011 performance evaluations, as well as performance-based bonuses in 2011 and 2012. (Id. ¶¶ 32-34.)

RB is a subsidiary of Reckitt Benckiser Group, PLC. (Id. ¶ 12.) In January 2012, RB group of companies reorganized its geographic areas, which led to the previously separated North American and European areas becoming part of the same geographic area. (Id. ¶¶ 36-37.) Following the reorganization, RB eliminated the central engineering role. (Id. ¶ 41.) Plaintiff alleges that RB initially decided to eliminate two positions, and that later three more positions were added to the elimination list, including Plaintiff's and another engineer, Gerry Syrek's, positions. (Id. ¶¶ 40-42, 46, 48-49.)

In December 2012, management notified Plaintiff that his position was being eliminated and that his last day of employment was to be January 31, 2013. (Id. ¶ 51.) Plaintiff was 56 years old when he was laid off by RB. (Id. ¶ 35.) On December 4, 2012, Plaintiff was given a severance proposal and 21 days to accept or reject it. (Id. ¶ 52.) Plaintiff alleges that Gerry Syrek was also informed that his employment would be terminated effective January 31, 2013 and that Mr. Syrek was also offered a severance package. (Id. ¶¶ 65-66.) Additionally, Plaintiff alleges that when Mr. Syrek met with Mr. Rao around this time, Mr. Rao told Mr. Syrek that "it was now the time at RB for new personnel" or words to that effect. (Id. ¶ 60.) Plaintiff claims that the statement

when taken in context was age-biased to Mr. Syrek. (Id. ¶ 62.) Through conversations with employees in RB's Human Resources unit and RB's in-house counsel, Plaintiff discovered that neither the Human Resources unit nor in-house counsel had reviewed the layoff decisions, and were not aware that Plaintiff and Mr. Syrek had been included in the layoff. (Id. ¶¶ 79-87.)

Plaintiff alleges that in mid-December 2012, RB presented Mr. Syrek with a second severance offer. (Id. ¶ 94.) The second severance offer gave Mr. Syrek the choice of continued employment at RB's Belle Meade facility, or voluntary separation with one year's severance pay. (Id. ¶ 97.) Working at the Belle Meade facility would add an additional 37 miles to Mr. Syrek's already 104 mile commute. (Id. ¶¶ 99-101.) Plaintiff alleges that the offer was a subterfuge, so that RB would be able to claim that Mr. Syrek quit. (Id. ¶103.) By considering Mr. Syrek "retained" the average age of those retained was 42.0 and the average age of those released was 52.3 (id. ¶ 115), whereas when Mr. Syrek was considered "released," the average age of those retained was 41.0 and the average age of those released 54.4. (Id. ¶ 114.)

Plaintiff alleges that on December 17, 2012, RB provided him with a second severance proposal, accompanied by age and job related data about the positions being eliminated in packaging. (Id. ¶¶ 120-122, Ex. B.) Plaintiff alleges that the data provided to him mistakenly reported Mr. Rao's age as 49 (when a later affidavit reported it was 43), and falsely reported that Mr. Syrek had been "retained." (Id. ¶¶ 123-124.) The second severance offer stated the "[t]he criticality of the positions to the Company's operations was the determining factor in identifying jobs subject to elimination." (Id. ¶ 127.) Plaintiff alleges that the offer did not define "criticality," nor did the employee handbook, nor had any previous evaluations or communications to Plaintiff about his job. (Id. ¶¶ 129-131.) RB reported to the EEOC that it has used "criticality" as "the

3

determining factor" in nine other layoffs within its U.S. operations within the past several years. (Id. ¶ 183.)

Plaintiff alleges that his duties were taken over by Gary Topoleski, despite the fact that Mr. Topoleski did not have the skills Plaintiff had as an industrial engineer skilled in packaging systems. (Id. ¶¶ 143-144, 152-153.) Mr. Topoleski was 48 years old at the time of the layoff, around 8 years younger than Plaintiff. (Id. ¶¶ 156-157.) Plaintiff further alleges that Kevin Brincat, Plaintiff's younger supervisee, was not laid off. (Id. ¶¶ 164.) Mr. Brincat was 52 years old at the time of the layoff, around 4 years younger than Plaintiff. (Id. ¶¶ 163-164.)

Plaintiff filed suit in this Court on June 6, 2014. On August 29, 2014, Defendant filed its motion to dismiss.

### III. LEGAL STANDARD

For a complaint to survive dismissal pursuant to Federal Rule of Civil Procedure 12(b)(6), it "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)). In evaluating the sufficiency of a complaint, the Court must accept all well-pleaded factual allegations in the complaint as true and draw all reasonable inferences in favor of the non-moving party. See Phillips v. Cnty. of Allegheny, 515 F.3d 224, 231 (3d Cir. 2008). "Factual allegations must be enough to raise a right to relief above the speculative level." Twombly, 550 U.S. at 555. Furthermore, "[a] pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.' Nor does a Complaint suffice if it tenders 'naked assertion[s]' devoid of 'further factual enhancement.'" Iqbal, 556 U.S. at 678.

### IV. DISCUSSION

4

Plaintiff's claims are for violations of the ADEA and the NJLAD. The ADEA prohibits an employer from, among other things, discharging or otherwise discriminating against any individual "with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's age." 29 U.S.C. §623(a)(1). Under the NJLAD, it is unlawful "[f]or an employer, because of the ... age ... of any individual ... to refuse to hire or employ or to bar or to discharge or require to retire, unless justified by lawful considerations other than age, from employment such individual or to discriminate against such individual in compensation or in terms, conditions or privileges of employment ..." N.J.S.A. §10:5-12(a).

Plaintiff brings three counts under the ADEA and four counts under the NJLAD. Defendant seeks to dismiss the Amended Complaint, in its entirety, for failure to state a claim upon which relief can be granted. The Court addresses each count in turn.

### A.    Count I and Count II

Counts I and II of the Amended Complaint are claims of direct evidence of age bias in violation of the ADEA and the NJLAD, respectively. (Am. Compl., ¶¶ 184-194.) Defendant asserts that Count I and Count II of the Amended Complaint fail as a matter of law because the Plaintiff alleges no direct evidence of age discrimination. (Def.'s Mot. 10-14.) The Court agrees.

A plaintiff may establish a disparate treatment claim under the ADEA and the NJLAD through either direct or circumstantial evidence.[2] Direct evidence must demonstrate that "the

---

[2] The Court will analyze plaintiff's age discrimination claims under the NJLAD and the ADEA together in one discussion because in construing the NJLAD New Jersey courts frequently look to federal discrimination statutes. See Abrams v. Lightolier Inc., 50 F.3d 1204, 1212 (3d Cir. 1995) ("New Jersey courts in applying the NJLAD generally follow the standards of proof applicable under the federal discrimination statutes."); see also Lawrence v. National Westminster Bank New Jersey, 98 F.3d 61, 65 (3d Cir.1996); Swider v. Ha-Lo Indus., Inc., 134 F. Supp. 2d 607, 621 (D.N.J. 2001) ("The New Jersey courts have interpreted the proofs and burdens of persuasion for discrimination under the LAD in the same manner as that under the federal anti-discrimination laws."); Grigoletti v. Ortho Pharm. Corp., 118 N.J. 89, 97 (1990)

decision makers placed substantial negative reliance on [the plaintiff's age] in reaching their decision," and thus a plaintiff seeking to prove his case through direct evidence confronts a "high hurdle." Connors v. Chrysler Fin. Corp., 160 F.3d 971, 976 (3d Cir. 1998) (quoting Price Waterhouse v. Hopkins, 490 U.S. 228, 277 (1989); see also Anderson v. Consol. Rail Corp., 297 F.3d 242, 248 (3d Cir. 2002). Direct evidence of discrimination is "evidence which, if believed, would prove the existence of the fact in issue *without inference or presumption*." Torre v. Casio, Inc., 42 F.3d 825, 829 (3d Cir. 1994) (emphasis in original) (internal quotations omitted). Evidence is not direct "where the trier of fact must *infer* the discrimination on the basis of age from an employer's remarks." Id. at 829 (emphasis in original). See e.g., Fakete v. Aetna, Inc., 308 F. 3d 335, 339 (3d Cir. 2002) (finding statement that supervisor was "looking for younger single people," and that as a consequence, the plaintiff, "wouldn't be happy [at the company] in the future" was direct evidence of age bias).

Plaintiff alleges that the following is direct evidence of Defendant's age discrimination: (1) Mr. Rao's statement to Mr. Syrek that "it's time for new personnel" (Am. Compl. ¶ 185); (2) the 13.4 year difference between the ages of those employees "retained" and those "not retained" (id. ¶ 186); and (3) Defendant listing Mr. Syrek as "retained" in the information sheet provided to Plaintiff along with the second severance offer, in an attempt to conceal the fact that Defendant's ineffective age discrimination compliance program had failed to prevent and detect the age

---

("The substantive and procedural standards that we have developed under the State's LAD have been markedly influenced by the federal experience.").

discrimination in the packaging department layoff. (Id. ¶¶187-189.) Even accepting Plaintiff's allegations as true, the Court would need to make further inferences to find these allegations are evidence of the discriminatory motives of Defendant, and therefore, they cannot be considered direct evidence.

Accordingly, Counts I and II of the Amended Complaint are dismissed.

### B.     Count III and Count IV

Counts III and IV of the Amended Complaint are claims of "pretext" age discrimination in violation of the ADEA and the NJLAD, respectively. (Am. Compl., ¶¶ 195-208.) In the absence of direct evidence of an ADEA or NJLAD violation, a plaintiff may establish discrimination using circumstantial evidence by means of the burden shifting "pretext" method set forth in McDonnell Douglas Corp. v. Green, 411 U.S. 792 (1973). See Anderson, 297 F.3d at 249; Monaco v. Am. Gen. Assur. Co., 359 F.3d 296, 300 (3d Cir. 2004); Bergen Commercial Bank v. Sisler, 157 N.J. 188 (1999).

Under the McDonnell Douglas framework as it has been applied to age discrimination cases where the plaintiff's employment has ended due to a reduction in force (as is the case here), in order to establish a *prima facie* case of age discrimination, a plaintiff must show that he: "(1) was a member of a protected class (i.e. he or she was forty years of age or older); (2) was qualified for the position at issue; (3) suffered an adverse employment action; and (4) was replaced by a sufficiently younger person, raising an inference of age discrimination." Anderson 297 F.3d at 249-50 (citing Showalter v. Univ. of Pittsburgh Medical Center, 190 F.3d 231, 234 (3d Cir. 1999)); see also Sempier v. Johnson & Higgins, 45 F.3d 724, 728 (3d Cir. 1995); Maxfield v. Sinclair Int'l, 766 F.2d 788, 792-93 (3d Cir. 1985).

Although the McDonnell Douglas framework has been employed in determining whether a plaintiff has established a *prima facie* case of a violation of the ADEA or the NJLAD, the Supreme Court held in Swierkiewicz v. Sorema N.A., 534 U.S. 506, 510 (2002) that the McDonnell Douglas factors create an evidentiary standard, not a pleading requirement at the motion to dismiss stage. The pleading requirements as discussed in Swierkiewicz were based on the Conley v. Gibson standard which permitted district courts to dismiss a complaint for failure to state a claim only if "it appear[ed] beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." 355 U.S. 41, 45-46 (1957).

In the wake of Twombly and Iqbal, for a claim to survive a motion to dismiss, the complaint must contain sufficient factual matter, accepted as true, to "state a claim to relief that is plausible on its face." Iqbal 556 U.S at 678 (quoting Twombly, 550 U.S. at 570). In assessing the effect of Twombly and Iqbal on Swierkiewicz, the Third Circuit has found that "because Conley has been specifically repudiated by both Twombly and Iqbal, so too has Swierkiewicz, at least insofar as it concerns pleading requirements and relies on Conley." Fowler v. UPMC Shadyside, 578 F.3d 203, 211 (3d Cir. 2009).

While Plaintiff need not establish the elements of a *prima facie* case in his complaint, the Court nevertheless finds that the McDonnell Douglas elements provide guidance in assessing whether Plaintiff has stated a plausible claim under the pleading standards of Twombly and Iqbal. The Court finds that Plaintiff adequately alleges facts to satisfy the first three prongs of the McDonnell Douglas framework. The Amended Complaint includes allegations that: (1) Plaintiff was 56 years old when discharged (Am. Compl. ¶ 196)[3]; (2) his work evaluations from 2008-2011

---

[3] See 29 U.S.C.§631(a) (ADEA protected class includes individuals over 40); N.J.S.A. 10:5-2.1 (NJLAD protected class includes individuals over 18).

8

had ranked him a strong performer, and he was performing his job at a level that met his employer's expectations when discharged (id. ¶ 197-198); and (3) he was discharged. (Id. ¶ 196.)

Defendant argues that Plaintiff's claim is not plausible because it fails to allege facts that establish the fourth prong of being replaced by a sufficiently younger person, to raise an inference of age discrimination. (Def.'s Mot. 16-17.) Although Defendant cites a Third Circuit case for the proposition that as a matter of law, to be considered "sufficiently younger" the employee taking over the plaintiff's duties must be "at least 10 years younger" (Def.'s Mot. 17 (citing Robinson v. Philadelphia, 491 F. App'x 295, 299 n.1 (3d Cir. 2012)), the Third Circuit has also stated that an eight year age difference is sufficient. Barber v. CSX Distrib. Servs., 68 F.3d 694, 699 (3d Cir.1995); see also Stafford v. Noramco of Del., 2000 WL 1868179, at *3 n.14 (D. Del. Dec.15, 2000) (holding that to establish a *prima facie* case, the "hired person must be at least eight years younger than the plaintiff), aff'd, 32 F. App'x. 32 (3d Cir. 2002), cert. denied, 537 U.S. 917 (2002); Becker v. ARCO Chemical Co., 15 F. Supp. 2d 600, 607-08 (E.D.Pa.1998) (finding an eight year age difference sufficient), rev'd in part on other grounds, 207 F.3d 176 (3d Cir. 2000). Other cases cited by Defendant found that seven years was insufficient to create an inference of age discrimination under the ADEA and the NJLAD, respectively. (Def.'s Mot. 17 (citing Narin v. Lower Merion Sch. Dist., 206 F.3d 323, 333 n.9 (3d Cir. 2000) (finding seven years insufficient to create an inference of discrimination under the ADEA); Anderson v. Thermo Fisher Scientific, No. Civ. 11-3394, 2013 WL 1222738 (2013) at *4 (D.N.J. Mar. 25, 2013) (finding seven year age difference insufficient to support an inference of age discrimination under the NJLAD), recons. denied, No. Civ. 11-3394, 2013 WL 3188916 (D.N.J. June 20, 2013)).

Here, Plaintiff alleges that his job duties were not abolished, but taken over by Mr. Topoleski, who Plaintiff alleges was about eight years younger than Plaintiff at the time of the

9

layoff. (Am. Compl. ¶¶ 143-157, 199-200.) Plaintiff also set forth allegations that Defendant retained Plaintiff's younger supervisee, Mr. Brincat, who was four years younger than Plaintiff at the time of the layoff. (Id. ¶¶ 158-164, 201-202.) At this stage in the proceedings, the Court finds that Plaintiff has alleged facts that state a plausible claim of discrimination under the ADEA and the NJLAD on the basis of circumstantial evidence.

Accordingly, the Court denies Defendant's motion to dismiss Count III and Count IV of Plaintiff's Amended Complaint.

### C. Count V and Count VI

Counts V (mistakenly identified by Plaintiff as Count VI) and VI of the Amended Complaint are claims for disparate impact discrimination under the ADEA and the NJLAD, respectively. (Am. Compl., ¶¶ 209-226.) Specifically, Plaintiff alleges that Defendant's consideration of the "criticality of the positions to the Company's operations" in identifying which jobs were subject to elimination created an adverse impact on "members of the affected class." (Id. ¶ 220.) Defendant argues that Plaintiff must show a significant adverse impact on those age 40 and older as compared to those age 39 and younger, and that he has failed to do so. (Def.'s Mot. 18-23.) The Court agrees.

"The Third Circuit has found that a plaintiff's prima facie burden for disparate impact claims is 'heavier than it is when disparate treatment is alleged.'" Bratek v. TD Bank, N.A., No. Civ. 11-3049, 2012 WL 603299, at *6 (D.N.J. Feb. 22, 2012) (citing Cherchi v. Mobil Oil Corp., 693 F. Supp. 156, 166 (D.N.J. 1988) aff'd, 865 F.2d 249 (3d Cir. 1988); Massarsky v. Gen. Motors Corp., 706 F.2d 111, 120 (3d Cir. 1983)). To establish a disparate impact claim, a plaintiff must identify the specific practice(s) alleged to have created a disparate impact, and show that this practice caused observable statistical differences affecting the protected class. Smith v. City of

Jackson, 544 U.S. 228, 241 (2005). The New Jersey Supreme Court has held that a disparate impact claim's requirements under the NJLAD are based upon the requirements of federal law. Gerety v. Atlantic City Hilton Casino Resort, 184 N.J. 391, 399 (2005) (citing Eposito v. Twp. of Edison, 306 N.J. Super. 280, 289-90 (App. Div. 1997)).

In support of his disparate impact claims, Plaintiff cites two statistics that he alleges demonstrate the significantly disproportionate or adverse impact on the protected class caused by Defendant's consideration of the "criticality of the positions" in determining which jobs were subject to elimination. (Am. Compl. ¶ 220.) First, Plaintiff alleges that the average age of those released as part of the reorganization of his department was 54.4, while the average age of those retained was 41. (Id. ¶¶ 216-218.) Additionally, Plaintiff has attached to his Amended Complaint a copy of a "Fisher's exact" test[4] that he alleges shows the reorganization of his department had an adverse impact upon employees older than 47.7. (Id. Ex. C.)

While the Third Circuit does not appear to have considered the issue of subgroup disparate impact claims, that is claims based upon evidence suggesting that a particular employment practice affected a subset of individuals within the protected class of those aged 40 or older, the majority view amongst the circuits that have considered this issue is that a disparate impact analysis must compare employees aged 40 and over with those 39 and younger, and therefore it is improper to distinguish between subgroups within the protected class.[5] See EEOC v. McDonnell Douglas

---

[4] Fisher's exact test is a statistical test used to determine if there are nonrandom associations between two categorical variables. In Plaintiff's Exhibit C, those variables are being over or under age 47.7 and whether the individual was released or retained. (Am. Compl. Ex. C.) See Weisstein, Eric W. "Fisher's Exact Test." From *MathWorld* – A Wolfram Web Resource http://mathworld.wolfram.com/FishersExactTest.html.

[5] Plaintiff cites no authority to suggest that the NJLAD would allow for disparate impact claims based upon an adverse impact on a subgroup of a protected class. As discussed above, generally New Jersey courts look to the federal discrimination statutes to supply the analytical framework and relevant standards for evaluating NJLAD claims. See supra n.2; see also Eposito, 306 N.J.

Corp., 191 F.3d 948, 950–51 (8th Cir.1999); Criley v. Delta Air Lines, Inc., 119 F.3d 102, 105 (2d Cir. 1997) cert. denied, 522 U.S. 1028 (1997); Lowe v. Commack Union Free School Dist., 886 F.2d 1364, 1373 (2d Cir.1989), superseded on other grounds by statute; Smith v. Tenn. Valley Auth., 924 F.2d 1059 (6th Cir.1991) (unpublished)). In McDonnell Douglas Corp., the court noted that "if disparate-impact claims on behalf of subgroups were cognizable under the ADEA, the consequence would be to require an employer engaging in a [reduction in force] to attempt what might well be impossible: to achieve statistical parity among the virtually infinite number of age subgroups in its work force." 191 F.3d at 951.

Plaintiff cites Karlo v. Pittsburgh Glass Works, LLC, 880 F. Supp. 2d 629 (W.D. Pa. 2012), a case that certified a class consisting of a subgroup of the protected class in an age discrimination suit.[6] (Pl.'s Opp'n 26-27.) In Karlo, the group of employees was seeking to certify a collective class action on behalf of those who were 50 years of age or older. 880 F. Supp. 2d at 636. Here, Plaintiff is not asking the Court to recognize a subgroup of the protected class consisting of employees 50 years of age and older, or 55 years of age and older. The statistical allegations made by Plaintiff show that the use of the facially neutral "criticality" factor in Defendant's layoff decisions led to a 13.4 year difference between the average age of those employees released versus the age of those employees not released, and that according to the Fisher's exact test, when examining those employees age 47.7 and older, there was a less than 0.1% chance that their layoff

---

Super at 289 (NJLAD disparate impact case assuming that persons over age forty are, as in the case of the ADEA, a protected class).

[6] Subsequently, the class was decertified in part, due to the plaintiffs' failure to show that they were similarly situated. See Karlo v. Pittsburgh Glass Works, LLC, No. 2:10-CV-1283, 2014 WL 1317595 (W.D. Pa. Mar. 31, 2014).

was by a random event.[7] (Pl.'s Opp'n 22-23.) However, this is similar to the type of subgroup breakdown in which the Karlo court believed litigants would be "highly unlikely" to engage. 880 F. Supp. 2d at 640 n.8 (dismissing defendant's argument concerning the possibility of plaintiffs asking the court to recognize creative subsets of subgroups of the protected class such as 45 ½ to 49 ¾ and finding it "*highly* unlikely that litigants may engage in the child-like practice of subdividing years.")

Plaintiff does not adequately plead that Defendant's consideration of the criticality of the positions to the company's operations in identifying which jobs were subject to elimination had an adverse impact on the protected class, namely those employees age 40 and over.

Accordingly, Counts V and VI of the Amended Complaint are dismissed.

**D.    Count VII**

Count VII of the Amended Complaint alleges that Defendant engaged in a pattern and practice of age discrimination in violation of the NJLAD. (Am. Compl., ¶¶ 227-246.) Defendant argues that Plaintiff has failed to state a plausible claim for relief since his allegations are insufficient to show that discrimination was Defendant's "standard operating procedure the regular rather than the unusual practice." (Def.'s Mot. 25 (citing Int'l Brotherhood of Teamsters v. United States, 431 U.S. 324, 336 (1977)). The Court agrees.

The Supreme Court has held that a plaintiff making a pattern and practice discrimination claim must show "more than the mere occurrence of isolated or 'accidental' or sporadic discriminatory acts." Teamsters, 431 U.S. at 336. A company engages in a pattern or practice of discrimination when it "regularly and purposefully" engages in less favorable treatment of a group in some aspect

---

[7] Defendant also ran the Fisher's exact test using a breakpoint age of 40, as opposed to Plaintiff's 47.7, and found that the association between being 40 and over or 39 and younger and whether that individual was released or retained was not statistically significant. (Def. Mot. Ex. C.)

of its employment practices. Teamsters, 431 U.S. at 335; see also Sperling v. Hoffmann–La Roche, Inc., 924 F. Supp. 1346, 1357 (D.N.J. 1996).

Plaintiff's allegations surrounding the lack of oversight by the human resources unit regarding the Defendant's layoff practices and procedures (Am. Compl. ¶¶ 165-183, 241-243), and Mr. Rao's subjective decision-making process in conducting his layoffs (id. ¶¶ 136, 242) do not amount to a pattern and practice of discrimination by the Defendant. As the Defendant points out, "a decision by a company to give managers the discretion to make employment decisions, and the subsequent exercise of that discretion by some managers in a discriminatory manner, is not tantamount to a decision by a company to pursue a systematic, companywide policy of intentional discrimination, i.e., a pattern or practice of discrimination." (Def.'s Mot. 26 (quoting Sperling, 924 F. Supp. at 1363)).

Additionally, although Plaintiff claims that the "criticality" factor which he alleges led to age discrimination in the reorganization of his own department was used in nine other layoffs (Am. Compl. ¶¶ 127-135, 183), he makes no further allegations concerning the details of those other layoffs, such as the ages of those laid off. The Court also finds that Plaintiff's allegations that Defendant routinely transferred younger Polish engineers to facilities in the United States where they displaced older, experienced engineers employed in the United States (¶¶ Id. 230-231), do not allege enough facts about the transfers for the Court to find that this was a "standard operating procedure" grounded in age discrimination and rising to the level of a pattern and practice of discrimination.

Accordingly, Count VII of the Amended Complaint is dismissed.

## V. CONCLUSION

Based on the reasons set forth above, Defendant's motion to dismiss Plaintiff's First Amended Complaint is denied as to Counts III and IV, and granted without prejudice as to the remaining counts. To the extent the deficiencies in Plaintiff's claim can be cured by way of amendment, Plaintiff is granted thirty (30) days to reinstate this matter and file an Amended Complaint solely for purposes of amending the dismissed claims.

An appropriate Order accompanies this Opinion.

DATED: March 26, 2015

_____
**CLAIRE C. CECCHI, U.S.D.J.**